667 A.2d 396

**Patricia CHRISTIANSEN, Administratrix of the Estate of Glen P. Christiansen, Appellant,**

**v.**

**Harold SILFIES, Richard Silfies, and Carl H. Betz Road and Building Materials, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 28, 1995.

Filed Oct. 11, 1995.

Reargument Denied Dec. 14, 1995.

Linda M. Shick & Martin N. Ghen, Doylestown, for appellant.

Leslie M. Cyr, Philadelphia, for Harold & Richard Silfies, appellees.

Anthony S. Pinnie, Wayne, for Betz Road & Building Materials, appellee.

Before ROWLEY, President Judge, and McEWEN and BECK, JJ.

BECK, Judge:

Plaintiff-appellant Patricia Christiansen, Administratrix of the Estate of Glen P. Christiansen, appeals from the trial court's refusal to grant a new trial in this wrongful death and

survival action filed against defendants-appellees Richard Silfies, Harold Silfies, and Carl H. Betz Road and Building Materials (hereinafter "Carl Betz"). We affirm in part and reverse and remand in part.

This action arose out of a fatal motor vehicle accident that occurred on October 16, 1989, at about 6:15 a.m. in foggy conditions, at the intersection of Routes 412 and 563 near Lake Nockamixon in Bucks County. Decedent Glen Christiansen's automobile collided with a tractor-trailer being operated by appellee Richard Silfies. The tractor-trailer was owned by appellee Harold Silfies, and at the time of the accident was leased to appellee Carl Betz. Richard Silfies was employed by Carl Betz. Appellant filed this negligence action against the appellees, claiming Richard Silfies was negligent in operating the tractor-trailer, and basing her claim against Harold Silfies and Carl Betz on a theory of negligent entrustment of the tractor-trailer to driver Richard Silfies. In support of her claim of negligent entrustment, appellant intended to present evidence of Richard Silfies's poor driving record. In their defense, appellees presented evidence that decedent Glen Christiansen caused the accident when he sped through a stop sign at the intersection and into the path of the tractor trailer. As a result, the Comparative Negligence Act, 42 Pa.C.S. § 7102 (Purdon 1982) is implicated.[1]

The trial judge "trifurcated" the matter and heard with a jury the case against tractor-trailer driver Richard Silfies

1. Since enactment of the Comparative Negligence Act, a plaintiff's contributory negligence no longer constitutes a complete bar to recovery in a tort action. A negligent plaintiff's recovery is limited as follows:

(a) General Rule.—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff. . . .

42 Pa.C.S. § 7102(a). Thus, for example, a plaintiff who is up to 50% causally negligent for his own harm may still recover damages, but any award must be reduced by the percentage of negligence apportioned to the plaintiff, or 50%.

first. The court's intention was to allow the jury to find liability, if any, on the part of driver Richard Silfies, and then to proceed with the negligent entrustment claim against Harold Silfies and Carl Betz. In this way, the court hoped to avoid admitting evidence of Richard Silfies's driving record, which would have been overly prejudicial in the negligence action against him, but would have been the critical evidence in the negligent entrustment claim against Harold Silfies and Carl Betz. A third phase to determine damages would then take place, if necessary.

In its answers on the Verdict Sheet, the jury found that Richard Silfies was negligent, and that his negligence was a substantial factor in bringing about Glen Christiansen's death. In addition, the jury found that Glen Christiansen was negligent, and that his own negligence was a substantial factor in bringing about his death. At this juncture, the jury was permitted to compare the causal negligence of Richard Silfies with that of Glen Christiansen. The jury found Richard Silfies to be 49% causally negligent and Glen Christiansen to be 51% negligent, thus foreclosing recovery under the Comparative Negligence Act. The trial court then held that it was not necessary to proceed on the negligent entrustment claim against Harold Silfies and Carl Betz because the negligent entrustment claim was dependent upon Richard Silfies's actual liability for damages. Of course, the damages phase was never reached.

Appellant claims that she is entitled to a new trial. She argues that the trial court erred in: 1) "trifurcating" the proceedings so that her husband's negligence was compared to just one of the three defendants in contravention of the Comparative Negligence Act; 2) excluding the testimony of her weather expert regarding the fog conditions at the time of the accident; 3) excluding the testimony of her tractor-trailer driver expert; 4) precluding reference to a commercial driver's manual; and 5) excluding testimony regarding application of Federal Motor Carrier Safety Regulations and Pennsylvania's Motor Vehicle Code.

██ We note our standard of review in this appeal from the denial of a motion for a new trial. We may reverse only where the trial court clearly and palpably abused its discretion or committed an error of law that controlled the outcome of the case. *Gray v. H.C. Duke & Sons, Inc.*, 387 Pa.Super. 95, 563 A.2d 1201 (1989); *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669 (1985).

██ We first address appellant's claim that the trial court erred in bifurcating the liability phase of the trial, and specifically, in allowing the jury to compare the causal negligence of Richard Silfies and Glen Christiansen before hearing the negligent entrustment case against Harold Silfies and Carl Betz. In doing so, the court reasoned that "before the jury could consider any negligent conduct on the part of defendants Harold Silfies and [Carl Betz], it would have to determine that defendant Richard Silfies' [sic] conduct was negligent and the cause of Glen Christiansen's death." We agree that bifurcating the liability phases so that the jury would hear the case against Richard Silfies independently from that against Harold Silfies and Carl Betz, due to the prejudicial nature of the negligent entrustment evidence, was a proper exercise of discretion by the trial court. However, we hold that the jury was prematurely permitted to apportion the causal negligence between Glen Christiansen and only one of the three defendants in the case.

The Comparative Negligence Act requires that the plaintiff's causal negligence be compared to that of the "defendant or defendants against whom recovery is sought." 42 Pa.C.S. § 7102(a). Our supreme court has held that this language means "recovery by an injured plaintiff will be precluded only where plaintiff's negligence exceeds *the combined negligence of all defendants.*" *Elder v. Orluck*, 511 Pa. 402, 515 A.2d 517, 525 (1986) (emphasis added).[2] We have found no binding

---

**2.** The holding in *Elder* was in a different factual context from this matter, and did not involve the complicating factor of a negligent entrustment claim. In addition, the decision is a plurality opinion. However, a majority of the participating members apparently did agree on the featured analysis of the Comparative Negligence Act, and the

cases that include this peculiar combination of a negligent entrustment claim and comparative negligence issues under similar circumstances. However, relevant decisions lead us to the conclusion that, although the negligence cases against Richard Silfies on the one hand and Harold Silfies and Carl Betz on the other may be tried separately, the comparison of their causal negligence to that of the plaintiff must be accomplished simultaneously, after the negligence determinations have been made.

We hold that on retrial, three phases of trial should take place: 1) the first in which Richard Silfies alone is the defendant, and the jury should determine whether he and the decedent were causally negligent; 2) the second in which Harold Silfies and Carl Betz's causal negligence is determined, and after which the jury may apportion the percentages of causal negligence attributable to each defendant and the decedent; and 3) the final phase during which damages may be tried and determined.[3]

Appellant alleged that Harold Silfies and Carl Betz negligently entrusted the tractor-trailer to driver Richard Silfies. The tort of negligent entrustment is described in the Restatement (Second) of Torts, § 308 as follows:

§ 308. Permitting Improper Persons to Use Things or Engage in Activities

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the

conclusion that the plaintiff's negligence must be compared to that of all defendants. *Elder, supra.*

3. We note that we would have no objection to a "bifurcated" proceeding, where what we here call the "second" and "third" phases could be collapsed into one phase of trial, with the attendant deliberations to follow. The critical factor, however, is that the prejudicial negligent entrustment evidence be kept separate from the initial determination of the driver-defendant's negligence and that the apportionment of all defendants' causal negligence be determined simultaneously thereafter. Within these parameters, we would leave the structure of trial to the discretion of the trial judge. We focus primarily on correcting the lower court's error in failing to follow such a procedure in this case.

activity in such a manner as to create an unreasonable risk of harm to others.

Section 308 imposes liability on a defendant because of her own acts in relation to an instrumentality or activity under her control; an "entrustor's" liability is not dependent on, derivative of, or imputed from the "entrustee's" actual liability for damages. *Johnson v. Johnson*, 410 Pa.Super. 631, 600 A.2d 965, 970 n. 5 (1991) (citing *Mendola v. Sambol*, 166 Pa.Super. 351, 71 A.2d 827 (1950)). However, our cases do require that the entrustee be causally negligent before the entrustor may be held liable through negligent entrustment.

■ In several decisions, this court has held that liability for negligent entrustment does not attach to the entrustor until the entrustee uses the entrusted instrumentality negligently, and is found *causally responsible* for ensuing harm. *See generally Erie Ins. Exchange v. Transamerica Ins. Co.*, 352 Pa.Super. 78, 507 A.2d 389 (1986), *rev'd on other grounds*, 516 Pa. 574, 533 A.2d 1363 (1987) (injured party may not recover on negligent entrustment theory unless the incompetent to whom a motor vehicle was entrusted caused the injury by his negligent use of it); *Pulleyn v. Cavalier Ins. Corp.*, 351 Pa.Super. 347, 505 A.2d 1016 (1986) (although the act of negligently entrusting a motor vehicle is an essential part of the tort, liability is not actually triggered until the motor vehicle is used in a negligent manner). *See also Kelly v. Carborundum Co.*, 307 Pa.Super. 361, 453 A.2d 624 (1982), *aff'd*, 504 Pa. 238, 470 A.2d 969 (1984) (Comparative Negligence Act provides for apportionment of negligence among the tortfeasors causally responsible for the injury).

According to these cases, in order for Harold Silfies and Carl Betz to be held liable for negligent entrustment, there must first be a finding that Richard Silfies was causally negligent in the collision with Glen Christiansen. In fact, the jurors did find that Richard Silfies was negligent, and that his negligence was a substantial factor in causing Christiansen's death. The jury should then have been permitted to hear the case against Harold Silfies and Carl Betz, to decide whether they were guilty of negligent entrustment, and whether any

474

such negligence was a substantial factor in causing Christiansen's death. Only after these preliminary questions were answered—whether Christiansen, Richard Silfies, Harold Silfies and Carl Betz were negligent and whether their negligence was a substantial factor in causing the accident—could the jury be instructed to apportion the relative percentages of causal negligence among Christiansen and *all the defendants*. *Elder, supra;* 42 Pa.C.S. § 7102(a).[4]

We hold that the trial court erred in allowing the jury to apportion negligence between the decedent and one defendant only, when the Comparative Negligence Act requires such apportionment to involve all defendants. The negligent entrustment theory of liability requires only an initial finding that the entrustee was causally negligent before the negligence case against the entrustors may proceed.[5] The jury did make such a finding in this case, and the trial court erred in prematurely allowing them to make the comparative negligence apportionment and ending the case too soon. We therefore must remand this matter for a new trial.[6]

■ We also address the appellant's other issues because they will likely be revisited in the new trial. Appellant asserts that the trial court erred in excluding testimony from an expert witness regarding the weather conditions at the time

4. We recognize that had this procedure been followed the jury would have heard the evidence relating to Richard Silfies's poor driving record prior to its apportionment deliberations. Any potential prejudice at this point could have been forestalled by appropriate instructions to the jury that they were not to consider the poor driving record of Richard Silfies with regard to the apportionment of negligence to him. Juries often are required to separate evidence and limit its application as instructed.

5. Of course, had the jury answered negatively the questions regarding Richard Silfies's causal negligence, the trial court would have correctly ended the matter as to appellees Harold Silfies and Carl Betz.

6. Appellees argue that the finding of 51% causal negligence on the part of decedent is conclusive despite the number of defendants whose negligence was compared with it. In other words, any error in this aspect of the case was harmless. However, we do not believe that such a conclusion is in keeping with the plain language and spirit of the Comparative Negligence Act, which clearly requires the comparison to be made between the plaintiff and all defendants who are causally negligent.

and place of the accident. There was varying testimony presented by several eyewitnesses regarding the density of fog and level of visibility at the accident scene.[7] Appellant claims that her meteorologist witness would have "presented evidence regarding the special climatological and topographical factors which give rise to 'dense' fog, and the resulting 'zero visibility' at the intersection on the day and time of the accident." Appellant's Brief at 8. The expert, who was not at the scene of the accident, would have based his opinion on a report by the National Weather Service.

■ The decision to admit expert testimony is within the sound discretion of the trial court and we will not reverse absent an abuse of that discretion. *Jackson v. Spagnola*, 349 Pa.Super. 471, 503 A.2d 944 (1986). The court precluded this testimony because of the availability of firsthand observations from eyewitnesses, and also because the expert's testimony was not necessary due to the fact that weather conditions involve matters of common knowledge that are easily described and understood by laymen. The conflicting testimony on this point could properly be evaluated by jurors without the aid of an expert; indeed, an expert's opinion on this matter could improperly carry undue weight in the jury's credibility determinations. *Collins v. Zediker*, 421 Pa. 52, 55–56, 218 A.2d 776, 778 (1966). Moreover, the expert's opinion in this matter was evidently based on hearsay information, and did not describe the precise location of the accident, but merely the "surrounding areas." We therefore affirm the trial court's decision to preclude the testimony of this expert witness.

■ Appellant next challenges the trial court's preclusion of testimony from her tractor-trailer driver expert, William Has-

7. Eva Barron testified that she was able to see approximately 200 feet from her kitchen window to the intersection. Trooper Philip Crossley testified that visibility was 50–100 feet. Robert Balbirer, Jr. testified that he could see 10–15 feet from his bedroom window, and even distinguished fog conditions present on the morning of the accident from those present on another occasion when there was zero visibility. Mr. Balbirer also testified that he was able to see a diffusion of light from his bedroom window from about 1,500 feet away. Charles Donahue testified that he was able to see the tractor-trailer from about 40–50 feet away.

kins. Prior to trial, appellant produced a report by Haskins that appellant concedes contained "some facts not in evidence or even some facts in evidence which were in contradiction to those in support of his report." [8]

However, appellant also made an offer of proof at trial that Haskins would render an opinion as to the standard of care to be used by commercial tractor-trailer drivers under certain weight and weather conditions that did exist in this case. The trial court precluded even this testimony on the basis that it was outside the fair scope of the expert report. Pa.R.Civ.P. 4003.5; *Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.,* 348 Pa.Super. 285, 502 A.2d 210 (1985) (the "fair scope" of an expert's report contemplates a reasonable explanation and even an enlargement of the expert's written words, but not a "new and different" version).

Haskins's written report, evidently forwarded to appellees about a year before trial, included the following opinion:

Due to weather and road conditions, the truck driver was driving too fast for conditions. He slammed on his brakes with an empty trailer, causing his brakes to lock up and the loss of control of the unit. Upon seeing the Christiansen vehicle in his roadway, the truck driver failed to take any appropriate evasive actions. Further, it is my opinion that if Richard Silfies had not locked up his brakes and maintained his direction of travel, this collision would not have occurred. In the alternative, he would have struck the [Christiansen] vehicle in the left rear quarter panel resulting in lesser damage. . . .

R. 35a. At trial, appellant's counsel made the following offer of proof with regard to testimony by Haskins:

I then would ask him what are the factors a tractor trailer driver considers in regulating his speed on the highway while driving those roads that we just talked about and

8. For example, the report contained statements that the visibility was limited to zero, a fact which was not adduced at trial, and that the accident occurred in the northbound lane, a statement contradicted by the evidence at trial. In addition, the report was based on a Compu-Weather report which was deemed to be inadmissible.

under foggy conditions what are the factors he considers. I believe he will answer that he would consider the load, what load he is carrying, the road conditions, that is, not just wet or dry, but size, shape, so forth, the weather, day or night[9] situation, and I would ask him how those factors would affect his driving, what he would do while driving the roadway under those factors—and I would use the factors involved in this case, a wet roadway surface and foggy conditions, and would ask him that he answer in the standard of a reasonable professional commercial truck driver. R. 77a. The trial court refused to allow Haskins to testify on the standard of care of a tractor-trailer driver under the weather and load conditions after this offer of proof, stating that the offer was outside the scope of the expert report produced in discovery.

 The "fair scope" inquiry involves a determination of whether the expert report "provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness." *Hickman v. Fruehauf Corp.*, 386 Pa.Super. 455, 459, 563 A.2d 155, 157 (1988). The decision to admit evidence outside the fair scope of an expert report is not reversible error absent prejudice or surprise to the opponent. *Trent v. Trotman*, 352 Pa.Super. 490, 508 A.2d 580 (1986). *See also Greer v. Bryant*, 423 Pa.Super. 608, 621 A.2d 999 (1993) (where an expert's report included an opinion that defendant-hospital should have admitted plaintiff-patient, the expert's trial testimony that the hospital should have admitted the patient despite a doctor's refusal was not outside the fair scope of his expert report).

 We do not agree that the expert report, although flawed in some respects,[10] did not put appellees on notice as to what the expert would say about weather, road and load

---

9. Appellant's counsel later conceded that time of day was not included in the expert's report, and presumably, that the testimony would not include this particular variable.

10. We note that mere errors in an expert's reasoning do not necessarily render his or her opinion inadmissible, although they certainly are matters for impeachment on cross-examination.

conditions, as well as the required braking and evasive action required under these circumstances. Where there is no surprise or prejudice, and an ample opportunity to rebut the proposed testimony is provided, the expert testimony should be admitted. *Butler v. Kiwi, S.A.*, 412 Pa.Super. 591, 604 A.2d 270 (1992). We hold that the trial court abused its discretion in precluding the proffered opinion by appellant's expert tractor-trailer driver Haskins.

Next, appellant claims that the trial court erred in precluding reference to the Commercial Driver's Manual (Commonwealth of Pennsylvania, Department of Transportation, Pub. 223 (5–89)). The manual contains guidelines for driving a tractor-trailer under certain given conditions, including load, visibility and speed variables, and describes recommended evasive actions. Richard Silfies was questioned about the manual and admitted that he was familiar with its contents, but further questioning was precluded by the trial court on appellees' objection.

Authoritative texts are not admissible for the truth of their contents; they may not be read to the jury or admitted as substantive evidence. *Cummings v. Nazareth Borough*, 430 Pa. 255, 242 A.2d 460 (1968). However, such manuals or texts may be used to cross-examine experts as to their familiarity or concurrence with the information, after the material has been established as standard and authoritative by expert testimony. *Nigro v. Remington Arms Co.*, 432 Pa.Super. 60, 637 A.2d 983, 993 (1993); *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. 611, 537 A.2d 334, 339 (1988); *McDaniel v. Merck, Sharp & Dohme*, 367 Pa.Super. 600, 533 A.2d 436, 437 (1987).

Here, appellant did not offer to present any expert testimony to establish the manual as an authoritative text during trial, despite her argument to this court that certain of her expert witnesses could have done so. Under these circumstances, we cannot hold that the trial court abused its discretion in precluding reference to the manual as presented by appellant. *Whyte v. Robinson*, 421 Pa.Super. 33, 617 A.2d 380

(1992) (questions regarding admissibility of evidence are subject to abuse of discretion standard).

Finally, appellant challenges the trial court's decision to exclude testimony regarding portions of the Federal Motor Carrier Safety Regulations and the Pennsylvania Motor Vehicle Code. We first note that certain portions of these regulations and the code were in fact read to the jury as applicable law they should consider during deliberations.[11] Moreover, relevant laws and regulations should be admitted to establish a duty of care and any breach of that duty as evidence of negligence. *Wisniewski v. Chestnut Hill Hospital,* 403 Pa. 610, 170 A.2d 595 (1961); *Brogley v. Chambersburg Eng. Co.,* 306 Pa.Super. 316, 452 A.2d 743 (1982). Violation of applicable laws may be negligence *per se. Garcia v. Bang,* 375 Pa.Super. 356, 544 A.2d 509 (1988). However, a review of the record reveals that the testimony to which appellant refers actually was excluded because it was outside the scope of the witness's area of expertise, and also because the expert would be providing an improper opinion.

Appellant claims that the trial court erred when it prevented Trooper Crossley, who is an expert on safety inspections of motor carriers, from testifying about the application of certain safety regulations. Trooper Crossley had been qualified as having performed over 500 truck inspections, and his duties included inspecting driver documents and safety equipment. Crossley was permitted to testify about the braking mechanisms on the Silfies tractor-trailer, which he inspected after the accident, and the driver's logbook. However, Crossley was not permitted to give his opinion as to the standard of care that Richard Silfies should have used while driving a tractor-trailer under conditions such as those present at the time of the accident. We find no error in this ruling. Trooper Crossley's expertise was limited to the application of certain regulations pertaining to inspections of truck equipment and documentation, and he was not qualified to

11. These parts described limitations on speed under certain road, visibility and weather conditions, rules on stop signs, and requirements for driver's licenses and corrective lenses.

opine about any other regulations which may have involved driving standards.

Appellant also asserts that her accident reconstruction expert, Charles Sulzbach, should have been permitted to offer an opinion on the application of the standard of care for truck drivers. An expert may indeed offer an opinion as to the ultimate issue, in this case, whether truck driver Richard Silfies complied with the applicable standards of care. But such opinion testimony is not proper where it requires a credibility assessment by the expert witness. *Kozak v. Struth*, 515 Pa. 554, 531 A.2d 420 (1987). Therefore, it would have been proper to have a qualified expert describe what the applicable standard of care is in a case such as this, but to allow the jury to apply the standard to the facts as they find them. *Id. Cf. Collins v. Zediker, supra* (expert testimony is not admissible when the matter may be described to the jury and the condition evaluated without the assistance of one claiming to have special knowledge on the subject, such as walking speeds).

However, appellant could not offer this type of admissible expert testimony through Charles Sulzbach. Although Mr. Sulzbach was permitted to testify on the issue of accident reconstruction, his area of expertise,[12] the trial court properly precluded his testimony on the standards of care of commercial truck drivers operating in hazardous conditions that may be defined in the Pennsylvania Motor Vehicle Code and the Federal Motor Carrier Safety Regulations. Such matters were simply outside Mr. Sulzbach's area of expertise.

Order affirmed in part and reversed and remanded in part; jurisdiction relinquished.

---

**12.** Mr. Sulzbach was permitted to testify, *inter alia*, about the type of truck involved, its lighting system and visibility out of the cab.